# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SUEANN CANDELARIA; CHERRIL CHIODINI; ROSA CORONEL; JULIETTE FARRAR; CYNTHIA PRIOLA; and LINDA RANCATI,<br><br>Plaintiffs,<br><br>vs.<br><br>TREASURE ISLAND, LLC, a Nevada Limited Liability Company,<br><br>Defendant. | Case No.: 2:10-cv-00376-RLH-GWF<br><br>**O R D E R**<br><br>(Motion for Summary Judgment–#25) |

Before the Court is Defendant Treasure Island, LLC's **Motion for Summary Judgment** (#25, filed July 15, 2011). The Court has also considered Plaintiffs Sueann Candelaria, Cherril Chiodini, Rosa Coronel, Juliette Farrar, Cynthia Priola, and Linda Rancati's Opposition (#28, filed Aug. 22), and Treasure Island's Reply (#34, filed Sep. 23).

**BACKGROUND**

This is an age discrimination case arising from Treasure Island's discharge of Plaintiffs. In March 2009, Treasure Island was purchased by Phil Ruffin. The transition in Treasure Island management that ensued included the hiring of a new Director at the spa and salon

1

where Plaintiffs worked.  Jennifer Martinez, the new Director, and Treasure Island management required every beauty professional at the spa and salon to re-apply for their job and pass an audition to get it back.  Plaintiffs claim they were either not allowed to do the audition, failed it, or, after passing it, discharged because of their age.  They subsequently filed suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  Treasure Island has now filed a motion for summary judgment, which, for the reasons discussed below, the Court grants.

## DISCUSSION

**1.     Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

///

///

1    The moving party bears the burden of showing that there are no genuine issues of
2 material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry
3 its burden of production, the moving party must either produce evidence negating an essential
4 element of the nonmoving party's claim or defense or show that the nonmoving party does not
5 have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
6 *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the
7 moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
8 "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
9 The nonmoving party "may not rely on denials in the pleadings but must produce specific
10 evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
11 *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
12 show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
13 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of
14 evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

15   **II.   Analysis**

16   The ADEA makes it unlawful for an employer to discharge an employee "because
17 of such individual's age." 29 U.S.C. § 623(a). ADEA claims are analyzed under the framework
18 established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973).[1] Under this
19 framework, the plaintiff has the burden of proving by a preponderance of the evidence that he or

---

[1] Treasure Island argues that the U.S. Supreme Court has held that the *McDonnell Douglas* framework does not apply in ADEA claims. In support of this argument, Treasure Island cites an unreported case, *McFadden v. Krause*, 357 Fed. Appx. 17 (9th Cir. 2009), which in turn cites a Supreme Court case, *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343 (2009). However, the *Gross* Court specifically noted that the Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." *Gross*, 129 S. Ct. at 2349 n. 2. The *Gross* Court was not analyzing the *McDonnell Douglas* framework, rather it held that the *Price Waterhouse* burden-shifting framework—the framework applied in mixed-motive Title VII cases—is inapplicable to ADEA cases. *Id*. Thus, when, in *McFadden*, the Ninth Circuit cites *Gross* for the proposition that "[t]he Supreme Court held that Title VII's burden-shifting framework does not apply in ADEA cases" the Ninth Circuit was referring to the *Price Waterhouse* framework, not the *McDonnell Douglas* framework. Therefore, until the Supreme Court addresses the applicability of *McDonnell Douglas* to ADEA cases, this Court will apply its evidentiary framework.

she has a *prima facie* case of discrimination. *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008). To establish a *prima facie* case of age discrimination the plaintiff must show (1) she is a member of the protected age group (*i.e.*, 40 years old or older), (2) she was performing at or above the level of the employer's legitimate and reasonable expectations, (3) she was discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances which give rise to an inference of unlawful discrimination. *Id*.

Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to come forward and articulate a legitimate, non-discriminatory reason for the adverse action. *Id*. If the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Id*. The plaintiff has the ultimate burden to prove, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross*, 129 S. Ct. at 2351.

With respect to the first step in the *McDonnell Douglas* framework—that Plaintiffs must establish a *prima facie* case of discrimination—it is undisputed that all of the Plaintiffs have satisfied the first and third elements of the *prima facie* case. They were all discharged by Treasure Island and they were all over the age of 40 at the time of their discharge. Therefore, the Court will analyze each individual Plaintiffs' claims to determine whether they have established the second and fourth elements of the *prima facie* case

  **A. Sueann Candelaria**

Treasure Island hired Sueann Candelaria in 1993 as a guestroom attendant. In 1996 Candelaria was transferred to the position of receptionist at the salon and spa and she held that position until June 2009, when Treasure Island discharged her.

  **1. *Prima Facie* Case**

First, the Court finds that Candelaria has satisfied the second element of age discrimination—that she was performing at or above the level of the employer's legitimate and

4

reasonable expectations.  Candelaria has provided evidence that throughout her employment with Treasure Island she was consistently commended by customers and management alike.  (Dkt. #29, Exhibits to Response, Ex. C).  Viewed in connection with the fact that Candelaria was employed as a receptionist for Treasure Island for almost 13 years, these commendations are sufficient to satisfy the second element of age discrimination.

Second, the Court finds that Candelaria has satisfied the fourth element of age discrimination—that she was replaced by substantially younger employees with equal or inferior qualifications.  Of the seven receptionists hired after Candelaria was discharged, five were in their 20s when hired, one was 30, and the other 44.  (Dkt. #31, Exhibits to Response, Ex. W).  All but one was therefore at least 10 years younger than Candelaria.  In addition, because Candelaria had 13 years of experience as a receptionist it is reasonable to infer that she had at least equal qualifications to the six youngest receptionists hired after her departure.  The Court finds this sufficient to establish a *prima facie* case of age discrimination.

### 2.   Legitimate Non-Discriminatory Reason

Treasure Island has provided evidence that Candelaria was terminated because she had a history of poor work performance that continued after Ruffin purchased the Treasure Island in 2009.  Indeed, Treasure Island has demonstrated that on numerous occasions Candelaria was rude and unprofessional towards guests, (Dkt. #25, Motion for Summary Judgment, Ex. 42, 47, 53, 56, 59, 61, 65, 71, 75), co-workers, (*id*., at Ex. 34, 46, 55, 64, 66, 67, 76), and supervisors (*id*., at Ex. 41, 45, 46, 65, 67).  The evidence also shows that Candelaria committed numerous errors in scheduling appointments, resulting in lost revenue for Treasure Island.  (*Id*. at Ex. 51, 52, 53, 60, 62, 70, 72).  Although these incidents occurred prior to Ruffin purchasing the Treasure Island, Jennifer Martinez, the Director for the spa and salon, testified in her deposition that this conduct continued even after the transition to new management.  (*Id.* at Ex. 83, Martinez Depo., 60:12–61:4).  This is adequate evidence to show that Treasure Island had a legitimate, non-discriminatory reason for discharging Candelaria.

### 3. Pretext

The Court finds that Candelaria has not demonstrated that Treasure Island's reason for discharging her—namely, poor work performance and unprofessional behavior—was pretextual. Regardless of the fact that the previous owners of Treasure Island retained Candelaria for 13 years despite her conduct, the new owners were within their rights to discharge her when that conduct continued. In addition, although Candelaria received numerous commendations from guests and management prior to Ruffin purchasing Treasure Island, there is no evidence that the conduct meriting those commendations continued after the transition in management. Therefore, there is insufficient evidence before the Court to create a fact question that the "but for" cause for Candelaria's termination was her age. To the contrary, the evidence provided by Defendants demonstrates that Candelaria was terminated for poor job performance and unprofessional or rude behavior. Accordingly, the Court grants Treasure Island's motion with respect to Sueann Candelaria.

### B. Cherril Chiodini

Treasure Island hired Chiodini in 2000 as a manicurist in the salon and spa, a position she held until she was terminated in May 2009.

### 1. *Prima Facie* Case

The Court finds that Chiodini has not established a *prima facie* case for age discrimination. Chiodini provides the Court with no evidence showing that she was performing her job in a satisfactory manner at the time she was discharged. She argues that the Court could infer satisfactory job performance from the fact that she kept her job as a manicurist for nine years. The Court disagrees. This fact alone is insufficient evidence to show that she was performing satisfactory at the time she was discharged, especially in light of Treasure Island's evidence demonstrating that Chiodini had a history of unsanitary (*id*. at Ex. 27, 29), unsafe (*id*. at Ex. 83, Martinez Depo., 25:4–24), and substandard work performance (*id*. at Ex. 26, 28) that continued after the transition in management (*id*. at Ex. 83, Martinez Depo., 24:21–25, 25:6–9, 26:4–7,

1  70:5–11; Weakland Depo., 22:11–21; 49:9–13; Ex. 30).  Chiodini points to no other evidence,
2  like, for example, the numerous commendations that Candelaria received, to show the Court that
3  she was performing her job satisfactorily when she was discharged.
4  However, even if the Court were to assume that Chiodini has established a *prima*
5  *facie* case, Defendants evidence (cited above) demonstrates a legitimate, non-discriminatory
6  reason for her discharge.  And Chiodini falls far short of establishing on rebuttal that this reason
7  was pretextual.  She certainly does not show that her age was the "but for" reason for her
8  discharge.  Therefore, the Court grants Treasure Island's motion as to Cherril Chiodini.
9      **C.**    **Rosa Coronel**
10  Treasure Island hired Coronel in 1998 as a hairstylist, a position she held until 2009
11  when Treasure Island discharged her.
12      **1.**    ***Prima Facie* Case**
13  The Court finds that Coronel has established a *prima facie* case for age
14  discrimination.  Treasure Island does not contend that Coronel was not performing her job
15  satisfactorily when she was discharged, and in any event her history of commendations by guests
16  and management demonstrates that she was.  (Dkt. #29, Exhibits to Response, Ex. J).
17  Furthermore, the next four hair stylists hired after Coronel's discharge were more than 10 years
18  younger than her.  (*Id*. at Ex. W).  Finally, given her almost 34 years of experience as a hair stylist
19  the Court can infer that Coronel had at least equal qualifications to these new hair stylists.
20  Therefore, Coronel has established a *prima facie* case.
21      **2.**    **Legitimate Non-Discriminatory Reason**
22  However, the Court finds that Treasure Island had a legitimate, non-discriminatory
23  reason for discharging Coronel.  Treasure Island provides evidence that Coronel was discharged
24  for making negative comments about management in front of co-workers and guests.  (Dkt. #25,
25  Motion for Summary Judgment, Ex. 3).  Treasure Island evidence supports the allegation that in
26  reference to Jennifer Martinez's schedule as Director of the salon, Coronel said "must be nice to

AO 72
(Rev. 8/82)

come and go whenever you want." (*Id*. at Ex. 3).   Treasure Island's evidence also supports the allegation that in reference to Mrs. Ruffin, Vice President of Treasure Island, Coronel said "I bet it's going to be beautiful spending her husband's money." (*Id*.).   This comment was negative in nature.  (*Id*. at Ex. 4). Tania Davis-Grimes witnessed Coronel make this statement in front of customers and reported it to Mrs. Martinez.  (*Id*. at Ex. 4).  Mrs. Martinez also received other complaints about Ms. Coronel making comments to co-workers.  (*Id*. at Ex. 4).  Treasure Island held a hearing to address all of these comments and concluded that Coronel had violated multiple company policies.  (*Id*.).  The Court finds that this is sufficient evidence to demonstrate that Treasure Island had a legitimate, non-discriminatory reason to discharge Coronel for making malicious statements, and for discourteous conduct towards guests and management.

### 3. Pretext

Coronel provides no evidence that discredits Treasure Island's legitimate, non-discriminatory reason for firing her, other than her own declaration denying that she ever made the alleged malicious comments above.  However, viewed in light of the fact that Coronel admitted in her deposition that she "could have" made the statement about Mrs. Ruffin because "[w]e were so upset at that point," (*id.* at Ex. 82, Coronel Depo., 78:1–25, 79:1–2), that she wasn't sure whether she made the statement about Mrs. Martinez's work schedule (*id*. at 86:7–10), that she made other negative comments about Mrs. Martinez (*id*. at 75:11-16), that she had been reprimanded in the past for talking negatively about management (*id*. at 87:9–12), and that she complained about company policies (*id*. at 80:9–14), the Court finds that Coronel's denials are insufficient to create a triable issue of fact.  In addition, Coronel admitted at her deposition that she never heard Mrs. Ruffin or Mrs. Martinez make any age-related comments.  (*Id*. at 46:1–4, 62:7–11).  Therefore, Coronel has not provided sufficient evidence to establish that she was fired because of her age. Accordingly, the Court grants Treasure Island's motion with respect to Rosa Coronel.

///

///

8

### D.  Juliette Farrar

Treasure Island hired Farrar as a manicurist in the salon and spa in 1997, a position she held until 2009 when Treasure Island discharged her.

#### 1.  *Prima Facie* Case

The Court finds that Farrar has established a *prima facie* case for age discrimination. Like Plaintiffs Coronel and Candelaria, Farrar provides numerous commendations from guests and management demonstrating that she was performing her job satisfactorily when discharged. (Dkt. #29, Exhibits to Response, Ex. K). These commendations, together with her length of employment (12 years) is sufficient to establish the second element of age discrimination. Furthermore, the manicurists hired after Farrar's discharge were more than 10 years younger than her when Treasure Island hired them. (*Id*. at Ex. W). And because she had 12 years experience as a manicurist the Court can infer that Farrar had at least equal qualifications to the three manicurists hired after her discharge. Therefore, Farrar has established a *prima facie* case.

#### 2.  **Legitimate Non-Discriminatory Reason**

Treasure Island has articulated a legitimate, non-discriminatory reason why it discharged Farrar—namely, because she failed to pass her audition.[2] Treasure Island's evidence demonstrates that Farrar failed her audition because she could not perform a full set of acrylic nails, something that she would be required to do regularly. (Dkt. #25, Motion for Summary Judgment, Ex. 86, Weakland Depo., 33:20–25, 34:1–25). In addition, during her audition, Farrar's customer service skills were poor, she was the only manicurist that auditioned who was nervous, and she was "fumbling" a lot. (*Id*. at 33:15–16; 34:1–24). Farrar was the only pre-existing Treasure Island employee of any age that failed the audition. (*Id*. at 37:2–5).

///

---

[2] When Ruffin became the owner of the Treasure Island the management team required all beauty professionals to re-apply for their job and demonstrate their qualifications for the job in an audition.

1   Farrar's job performance before the audition also supports Treasure Island's claim
2   that she was not qualified to work at the salon. Specifically, before Jennifer Martinez began
3   working as Director of the salon and spa she received a manicure and pedicure from Farrar during
4   which Martinez observed an unsanitary workstation (*id*. at 15:4–11, 21:21–23), with visibly dirty
5   tools, (*id*. at 15:4–11). Martinez felt that she did not receive a good pedicure, and that Farrar was
6   not particularly well-skilled. (*Id*. at 22:2–10). Therefore, Treasure Island has demonstrated a
7   legitimate, non-discriminatory reason for Farrar's discharge.

        **3.    Pretext**

9   Farrar argues that pretext can be inferred from the fact that Treasure Island has not
10  been consistent with its reason for discharging her. When Farrar was first discharged Treasure
11  Island stated that the reason was a reduction in work force. (Dkt. #29, Exhibits to Response, Ex.
12  K). After the litigation commenced however Treasure Island changed its reason to poor job
13  performance. (*Id*. at Ex. V). The Court finds that this evidence is far too ambiguous and vague to
14  create a legitimate factual question of pretext. It is possible that Treasure Island was reducing its
15  work force[3] and that Farrar was included in that reduction because of her poor job performance.
16  Regardless, Treasure Island has provided ample evidence demonstrating that her poor job
17  performance was at least one of the reasons, if not *the* reason, Farrar was hired. Farrar, on the
18  other hand, has produced insufficient evidence to demonstrate that she was fired because of her
19  age. Her only other argument is that her history of commendations demonstrates that she was fired
20  because of her age. The Court disagrees. These commendations do not discredit Treasure Island's
21  evidence that Farrar performed poorly in her audition and was discharged for that poor
22  performance. Accordingly, the Court grants Treasure Island's motion for summary judgment as to
23  Juliette Farrar.

---

[3] Farrar also argues that Treasure Island's claim that they were reducing its work force is discredited by the fact that it hired three new manicurists after Farrar was discharged. The Court finds this argument unconvincing because the fact that three new manicurists were hired does not erase the possibility that the overall workforce was reduced.

### E. Cynthia Priola

Treasure Island hired Priola as a aesthetician in 1993, a position she held until 2009 when Treasure Island discharged her.

#### 1. *Prima Facie* Case

The Court finds that Priola has not established a *prima facie* case for age discrimination because she cannot show that she was replaced by substantially younger aestheticians. Specifically, one of the aestheticians hired after Priola's discharge was 48 years old, only one year younger than Priola when she was discharged. (#29, Exhibits to Response, Ex. W). Another was 46 years old. (*Id*.). The fact that the other two aestheticians hired after Priola's departure were 27 and 37 is not sufficient to demonstrate to the Court that Treasure Island replaced Priola with substantially younger aestheticians.

However, even if the Court were to presume that Priola established a *prima facie* case, Treasure Island has produced sufficient evidence demonstrating that it had a legitimate, non-discriminatory reason for discharging her. Specifically, Treasure Island produced evidence showing that Priola had a poor attitude and was negative and hostile towards management. (Dkt. #25, Motion for Summary Judgment, Ex. 83, Martinez Depo., 77:15–22, 78:3–5, 78:19–24; Ex. 84, Priola Depo., 48:18–49:1, 50:13–16, 60:6–10). In addition, Priola's attempt to discredit Treasure Island's reason for discharging her are insufficient for the same reasons the rest of the Plaintiffs' attempts are insufficient. Therefore, the Court grants Treasure Island's motion for summary judgment as to Cynthia Priola.

### F. Linda Rancati

Treasure Island hired Rancati in 2004 as a receptionist at the spa and salon. She later began working as an aesthetician, a position she held until 2009 when Treasure Island discharged her.

///

///

### 1. *Prima Facie* Case

It is unclear to the Court whether Rancati meets the *prima facie* case for age discrimination because one of the aestheticians hired in her place was 48 years old when hired (only 9 years younger than Rancati when she was discharged) and another was 46 (only 11 years younger). While it is true that the other two aestheticians hired after Rancati was discharged were 27 and 37, the Court is not persuaded that she was replaced by *substantially* younger employees. *Diaz*, 521 F.3d at 1207.

However, even if the Court were to assume that Rancati has established a *prima facie* case, Treasure Island has provided sufficient evidence to demonstrate a legitimate, non-discriminatory reason for discharging Rancati. Specifically, Treasure Island claims that Rancati was fired for poor job performance stemming from her poor attitude and hostility towards management. Treasure Island has provided evidence that Rancati's poor attitude and hostility existed in the past (Dkt. #25, Motion for Summary Judgment, Ex. 18, 19, 20, 21, 22, 23) and that it continued under the new management (*id.* at Ex. 83, Martinez Depo., 96:12–24; Ex. 85, Rancati Depo., 35:12–15; 47:24–48:14). In addition, Rancati admitted the possibility that her discharge was linked to an inquiry her co-worker made to the Nevada Cosmetology Board regarding proper aesthetician practices. (*Id.* at Ex. 85, Rancati Depo., 57:15–17).

Furthermore, Rancati's arguments in attempting to discredit Treasure Island's proffered reason for discharging her fail for the same reasons the other Plaintiffs' arguments fail. In addition, Treasure Island points out that two of the aestheticians that were discharged in addition to Rancati and Priola were in their twenties. It is difficult for the Court to find age discrimination when a company discharges some people from the protected age group and some from outside that age group and replaces them with some people from the protected age group and some from outside that age group. In any event, the Court finds that Rancati has fallen far short of demonstrating that she was discharged because of her age. Therefore, the Court grants Treasure Island's motion as to Linda Rancati.

### G. Plaintiffs' Additional Evidence

Plaintiffs also point to additional evidence in an attempt to demonstrate Treasure Island's alleged discriminatory intent. Plaintiff Candelaria alleges that sometime in April 2009 she heard Mrs. Ruffin, Vice President of Treasure Island, tell Jennifer Martinez, Director of the spa and salon, that she "wants young beautiful girls here." (Dkt. #28, Response, Ex. 1, Candelaria Decla., ¶5). Plaintiff Priola claims that she heard Martinez say "we're getting rid of the old crew and starting over fresh with a new crew." (*Id*. at Ex. 6, ¶10). These and other similar statements are insufficient to create a fact question that Plaintiffs were discharged because of their age. The Court has no way of knowing the context, subject matter, and demeanor of these statements.

Plaintiffs also provided an expert report from Stan V. Smith, PhD, as statistical evidence that Treasure Island had a discriminatory intent. Statistical evidence must "show a stark pattern of discrimination unexplainable on grounds other than age" to establish discrimination. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990). This report only takes into account two variables, the employee's age at the time of hiring and the employee's age at the time of discharge. (Dkt. #31, Exhibits to Response, Ex. Y). Such reports not considering other variables are treated skeptically by courts, *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003), including this Court. This report establishes that the average age of all employees at Treasure Island was 37.1 and the average age of employees terminated by new management was 38.8. As Treasure Island points out, this is a statistically insignificant difference. And the fact that 52.17% of the employees 40 and older were terminated while only 38.4% of employees under 40 were terminated is not sufficient to "show a stark pattern of discrimination unexplainable on grounds other than age." *Rose*, 902 F.2d at 1423.

///
///
///
///

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Treasure Island's Motion for Summary Judgment (#25) is GRANTED. The Court instructs the Clerk of Court to close the case.

Dated: January 23, 2012

_____
ROGER L. HUNT
United States District Judge